**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TIMOTHY BOOTH,** : | |
|     Plaintiff, : | |
| : | |
| v. : | **CIVIL ACTION NO. 25-CV-0984** |
| : | |
| **THE CITY OF PHILADELPHIA** : | |
| **POLICE DEPARTMENT,** *et al.*, : | |
|     Defendants. : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                               **April 7, 2025**

Timothy Booth has filed another civil action against his former employer, the City of Philadelphia Police Department, and his former supervisor Captain Scott Drissel. Booth also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Booth leave to proceed *in forma pauperis* and dismiss the Complaint.

**I.      BACKGROUND AND FACTUAL ALLEGATIONS**

    **A.      The 2020 Case – *Booth I***

Booth filed a *pro se* Complaint in this Court claiming religious discrimination on March 31, 2020. *Booth v. Drissel*, No. 20-1751 ("*Booth I*"). In his counseled Second Amended Complaint in that case (ECF No. 37), he alleged that he is a Black Muslim man who had been employed as a custodian with the Philadelphia Police Department since September 2012. (*Id.* ¶¶ 6, 9.) The named Defendants, Captain Scott Drissel, Lieutenant Tamika Allen, and Sergeant Brian McMenamin, were police officers with the Philadelphia Police Department. (*Id.* ¶ 7.) Drissel was the Commanding Officer for Booth's workplace at the Police Department's 12th District building in January 2019. (*Id.* ¶¶ 24-25.)

Booth alleged that there were six separate verbal altercations between him and either Lt. Allen or Sgt. McMenamin, occurring between April 2018 and July 2019, that formed the basis of his claims. Two verbal altercations occurred on April 10, 2018 between Booth and Allen, allegedly prompted by Booth complaining about Allen to her subordinates and by Booth then reporting Allen to their supervisor regarding the first exchange, resulting in Allen being reprimanded. (*Id*. ¶¶ 16-22.) A third incident occurred on March 12, 2019, when Allen allegedly threatened Booth and warned him to keep the female locker room door closed. (*Id*. ¶ 27.) The fourth incident occurred on March 19, 2019, when Allen accused Booth of not keeping the female locker room door closed. (*Id*. ¶¶ 32-33.) The fifth incident occurred when Booth asked Allen why she put a padlock on the female locker room door, requiring him to get a key to open it, and Allen allegedly answered that it was to teach Booth a lesson. (*Id*. ¶ 38.) The sixth incident occurred on July 17, 2019, when Sgt. McMenamin allegedly verbally abused and assaulted Booth for improperly accepting a ride from an on-duty police officer to get coffee. (*Id*. ¶¶ 65-69.)

After being accused of insubordination towards Allen by Captain Drissel, Booth told Police Commissioner Richard Ross about the alleged unfair treatment. (*Id*. ¶ 49.) Shortly after, Booth was told that he would need to cease using a break room he had used to pray daily to make room for evidence storage, and some of his personal items, including his prayer rug, were moved to a garage, which Booth alleged constituted religious discrimination. (*Id*. ¶¶ 50-56.) While in the garage, Booth observed empty beer cans and liquor bottles that had allegedly been drunk by officers after being confiscated from arrestees. (*Id*. ¶¶ 56-57.)

On May 16, 2019, Booth made a statement to Sergeant Brent Conway of the Internal Affairs Division, detailing his exchanges with Allen and explaining what had happened with the

2

break room and that his belongings, including that his prayer rug, had been moved. (*Id*. ¶¶ 58-59.) Booth alleged that McMenamin was yelling in his face with balled fists during the sixth incident. (*Id*. ¶ 68.) After filing the "whistleblower" complaint against McMenamin, No. 19-98-090023 ("the '0023 internal affairs complaint") and sending it to Internal Affairs on July 19, 2021 (*id*. ¶ 73), an Internal Affairs inspector sent the complaint to Drissel on September 20, 2019. (*Id*. ¶ 101; Ex B (referencing control number 19-0023).) Booth contends that Drissel questioned him about the complaint in an intimidating manner and, on October 2, 2019, served him with retaliatory disciplinary charges for approaching McMenamin in a threatening manner during their exchange. (*Id*. ¶¶ 83-108.) Booth alleged that he suffered a mental breakdown due to these disciplinary charges and was consequently out of work since October 3, 2019. (*Id*. ¶ 110.) He filed an EEOC claim based on these incidents on October 8, 2019. (*Id*. ¶ 111.)

Based on these allegations, Booth asserted claims for violations of 42 U.S.C. § 1981 (Count 1), 42 U.S.C. § 1983 (Counts 2, 3), Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts 4, 5), the Pennsylvania Human Relations Act ("PHRA") (Counts 6, 7), assault (Count 8), invasion of privacy (Count 9), intentional infliction of emotional distress (Count 10), and violation of the Pennsylvania Whistleblower Law ("PWL") (Count 11). In a decision filed November 1, 2023, the Court granted motions for summary judgment filed by the City, Drissel, Allen, and McMenamin on Counts 1 through 7; all other counts were dismissed without prejudice for lack of subject matter jurisdiction and with leave to reassert those claims in state court. *Booth v. Drissel*, No. 20-1751, 2023 WL 7183508, at *1 (E.D. Pa. Nov. 1, 2023), *aff'd*, No. 23-3004, 2024 WL 3811624 (3d Cir. Aug. 14, 2024) (*per curiam*).

B.     **The 2023 Case –** *Booth II*

On November 6, 2023, several days after this Court's decision in *Booth I*, Booth filed *pro se* complaint in the Philadelphia Court of Common Pleas based on the same October 8, 2019 EEOC claim, which was subsequently removed to this Court by the Defendants. Booth not only raised the state law claims dismissed without prejudice in *Booth I*, but also the federal law claims for which the Defendants were granted summary judgment. *Booth v. Drissel*, No. 23-4741 (ECF No. 1 (Notice of Removal appending state court complaint) ("*Booth II*"). After the Defendants moved to dismiss the case, the Court entered Orders on January 5, 2024 and January 8, 2024 granting the motions and dismissing the federal law claims with prejudice on *res judicata* grounds because they were duplicative of the claims previously dismissed with prejudice in *Booth I*. (*Booth II*, ECF Nos. 13, 15.) The state law claims were again dismissed without prejudice for refiling, if at all, in state court. (*Id.*)

C.     **The 2025 Case –** *Booth III*[1]

Booth's new Complaint includes as background the same facts asserted in the two prior cases involving the incidents that began in 2019 up through the time he filed the Second Amended Complaint in *Booth I* on July 12, 2021, specifically related to his filing of the '0023 internal affairs complaint against Drissel for allegedly stealing the confiscated beer and liquor.[2] (Compl. (ECF No. 2) at ¶¶ 1-82.) He also alleges new facts, specifically that he lost a worker's compensation claim on May 25, 2022 and was cleared to return to work but was wrongfully

---

[1] The facts recited in this portion of the Court's Memorandum are taken from Booth's Complaint in Civil Action 25-984. The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] The Court understands Booth to have included these allegations as background for his new claims, rather than as an attempt to reassert claims that have already been finally adjudicated against him.

4

terminated from his job on November 28, 2023 because Drissel "sent the fraudulent retaliatory charges that [were] dated 5/24/21 to the 17th district captain O'Donnell" saying that Booth had to sign the charges or would be fired.  (Compl. (ECF No. 2) at ¶¶ 83-84.); *see generally Booth v. Unemployment Comp. Bd. of Rev.*, 286 A.3d 395, No. 834 C.D. 2021, 2022 WL 4088105, at *6 (Pa. Commw. Ct. Sept. 7, 2022) ("Based on the evidence Claimant presented and the admissions made in the reconsideration request, which acknowledged that he was not medically cleared to work and was not able to work, we cannot say the Board abused its discretion in denying Claimant's reconsideration request.").

Before this, on September 22, 2022, Booth was placed on "no duty status" by a City doctor for over one year because the doctor never cleared him to return to work.  (Compl. ¶¶ 85-88.)  His employment status was then placed "in abeyance" in January 2023 and a hearing was scheduled on his appeal of his status for May 2, 2023.  (*Id*. ¶ 90.)  Booth filed for an extended period of leave on October 6, 2023, that was approved on October 11, 2023, granting him a leave of absence through January 11, 2024.  (*Id*., pg. 19, ¶¶ 91, 86-87.[3])  He claims he was wrongfully terminated on November 28, 2023 due to his filing the '0023 internal affairs complaint against Drissel, and asserts that the reason the City provided for the termination – that he failed to return to work – was false since he had been granted extended leave.  (*Id*. ¶ 90.)  Booth claims that Drissel twice changed the date on the charges he filed against him from the original date of September 18, 2019 to December 24, 2020 and then to May 24, 2021, and "then held the fraudulent charges until [Booth] returned back to work and sent it to the 17th District on 9-13-2022 . . . to get [him] terminated because of the whistleblowing complaint . . . that was lodged

---

[3] The Court notes that on page 19 of the Complaint Booth's paragraph numbers after ¶ 91 begin again at ¶ 86.)

5

against him and his 12th District subordinates."  (*Id*.)   He alleges that the City acquiesced in and was deliberately indifferent to the actions taken against him by its lawyers and officials in the Police Department.  (*Id*. ¶ 121.)

Booth attached to the Complaint a memo written by Drissel dated September 18, 2019, summarizing his investigation of the '0023 internal affairs complaint involving the incidents between Booth and Sgt. McMenamin and recommending that Booth be disciplined for conduct unbecoming a police department employee because he acted with insubordination and lied during the investigation.  (*Id*. at 65-68.)  The charge was approved by the commanding officer of the charging unit on October 3, 2019.  (*Id*. at 70.)  A letter from the Chief Inspector of the City's Office of Professional Responsibility dated September 20, 2019, indicates that the official sent the '0023 internal affairs complaint to Drissel.  (*Id*. at 74-75.)

Booth also attached the post-termination charge he made with the Pennsylvania Human Relations Commission ("PHRC") dated January 24, 2024, alleging retaliation based on his filing the '0023 internal affairs complaint, and indicating his charge was dual-filed with the EEOC.  (*Id*. at 31-33.)  The PHRC rejected his charge because "Whistleblowing retaliation not related to discrimination is not covered by the PA Human Relations Act because Whistleblowing is not a protected class.  A whistleblowing complaint must be related to discrimination based on a protected class covered under our act for the PHRC to have jurisdiction."  (*Id*. at 35.)  He received a "right to sue" letter from the EEOC on December 9, 2024.  (*Id*. at 29.)

In his Complaint filed on February 25, 2025, Booth asserts a wrongful termination/retaliation claim under Title VII alleging his termination was due to his filing of the #19-0023 whistleblower complaint, alleging that the City's stated reason for his termination – that he refused to return to work – was a pretext since he had been granted extended leave (*id*.

6

pg. 1, 24). He also asserts § 1983 claims based on "retaliatory fraudulent departmental investigations" and his termination (*id*. pg. 1), and a claim based on the anti-retaliation provision of the Sarbanes Oxley Act (*id*. at 2).

## II.  STANDARD OF REVIEW

Because Booth appears to be incapable of paying the filing fees to commence this action, the Court will grant him leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Booth's favor, and ask only whether the Complaint, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of the *pro se* Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (internal quotation omitted). An unrepresented litigant "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.* (internal quotation omitted); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to

act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III. DISCUSSION

#### A. Sarbanes-Oxley Whistleblower Claim

Booth asserts a claim under the Sarbanes–Oxley Act. The Act's whistleblower protection provision creates a private cause of action for employees of publicly-traded companies who are retaliated against for engaging in certain protected activity. *See* 18 U.S.C. § 1514A(a)(1)(C) ("No [publicly-traded company] . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of [18 U.S.C] section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders. . . .). Booth alleges he was employed by the Philadelphia Police Department, not a publicly traded company. Accordingly, his Sarbanes-Oxley claim is dismissed with prejudice. *Accord Williams v. New York City Dep't of Educ. ex rel. City Sch. Dist.*, No. 12-8518, 2013 WL 5226564, at *14 (S.D.N.Y. Sept. 17, 2013) (dismissing Sarbanes-Oxley claim where plaintiff was employed by public entity employer stating "Williams may not bring a claim under the whistleblower provisions of Sarbanes–Oxley because she has not alleged any facts showing that either the NYCDOE or the City of New York meets the requirements of employers covered under the Sarbanes–Oxley Act"), *report and recommendation adopted in part sub nom. Williams v. City of New York*, 2014 WL 1383661 (S.D.N.Y. Mar. 26, 2014), *aff'd*, 602 F. App'x 28 (2d Cir. 2015).

B.    **Retaliation Claims**

Booth alleges both a Title VII retaliation claim and a First Amendment retaliation claim against the Philadelphia Police Department based on his allegedly being terminated after filing the '0023 internal affairs complaint.  Title VII prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability.  *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112).  For a retaliation claim under Title VII to be plausible, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) he engaged in conduct protected by Title VII; (2) the employer took adverse action against him; and (3) a causal link exists between the protected conduct and the employer's adverse action."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citation omitted).  Title VII protects "those who oppose discrimination made unlawful by Title VII."  *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).  Not every complaint about employment entitles its author to protection from retaliation under Title VII.  *See Burlington N. & Santa Fe Ry.*, 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)).  Rather, only complaints about discrimination prohibited by Title VII - that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2 - constitute "protected activity."  *Davis v. City of Newark*, 417 F. App'x 201, 202-03 (3d Cir. 2011) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)).  "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII."  *Id.* at 203 (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del.*, Inc., 450 F.3d 130,

135 (3d Cir. 2006)). "General complaints of unfair treatment will not suffice." *Id*. (citing *Barber*, 68 F.3d at 702).

Booth's Title VII retaliation claim based on his allegedly being terminated after filing the '0023 internal affairs complaint is not plausible because, as the United States Court of Appeals for the Third Circuit has already instructed Booth in his appeal of the dismissal of *Booth I*, the '0023 internal affairs complaint does not concern conduct prohibited by Title VII. *See Booth v. Drissell*, No. 23-3004, , at *2 (3d Cir. Aug. 14, 2024) ("While there is ample evidence that Booth made general complaints of unfair treatment at work, such complaints do not suffice [to show protected conduct under Title VII]"). Booth's § 1983 retaliation claim is also not plausible because, as he was also instructed, in submitting the '0023 internal affairs complaint, he did not engage in matters of public concern sufficient to support a First Amendment retaliation claim. *Id*., at *2 n.6 ("there is no evidence suggesting that Booth engaged in constitutionally (i.e., First Amendment) protected citizen speech on a matter of public concern, rather than in mere employee speech on matters of concern personal to Booth."). Having previously raised these claims, he is precluded from reasserting them in this case. *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) ("Claim preclusion — which some courts and commentators also call *res judicata* — protects defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." (internal quotations omitted)); *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) ("'Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the *essential similarity* of the underlying events giving rise to the various legal claims.'") (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-84 (3d Cir. 1984)).

Finally, Booth's Title VII retaliation claims against Defendant Drissel is dismissed with prejudice for the additional reason that Title VII only makes it unlawful for an "employer" to discriminate. 42 U.S.C. § 2000e-2(a)(1). An "employer" is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). The United States Court of Appeals for the Third Circuit has declined to extend liability under Title VII to individuals, such as Defendant Drissel, holding the term "employer" as used in Title VII does not encompass individual employees. *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir.1996).

### C. Due Process Claim

Booth also appears to allege a due process claim since he cites the Fourteenth Amendment. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Thus, a deprivation of a property right such as public employment should "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). Booth alleges that he received process prior to his termination. (Compl. ¶ 89 (stating Booth filed a civil service appeal after he was directed to return to work); *id*. ¶ 87 (stating Booth exercised his right to file a civil service appeal in the Court of Common Pleas).) He does not allege how that process was deficient to protect his rights.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Booth's claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). As an attempt to amend the claims would be futile, the dismissal will be with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002) (stating

amendment should be granted unless it would be futile.  An appropriate Order will be entered separately.  *See* Federal Rule of Civil Procedure 58(a).

                **BY THE COURT:**

                **/s/ John Milton Younge**
                **JOHN MILTON YOUNGE, J.**